Beck v. Gage et al.                    [Vol. 21 (N.S.)

## COMPETENCY OF DECLARATIONS BY A DECEASED HUSBAND.

Circuit Court of Cuyahoga County.

SARAH E. C. BECK v. BENJAMIN A. GAGE ET AL.

Decided, February 18, 1907.

*Evidence—Declarations of Maker of Note as to His Relations with Payee, When Not Admissible.*

In an action upon a promissory note brought by a widow against the administrator of her deceased husband's estate, in which the only issues are as to the execution of, and consideration for, the note sued upon, declarations of the deceased husband made to third parties in the absence of the wife, as to the relations existing between himself and his wife at that time, are not competent evidence.

*Arnold Green,* for plaintiff in error.
*Solders, Thayer & Mansfield* and *Guerin & Gage,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The parties here are as they were in the court below. Suit was brought by the plaintiff against the defendant, to have allowed as a valid claim against the estate of Fred'k T. Beck, deceased, an amount which she claimed was due to her upon a promissory note, copied in the petition, which reads:

"$500.00.                         SEPTEMBER 20, 1899.
"On demand for value received I promise to pay Sarah E. C. Beck Five Hundred Dollars, with interest at six per cent.
                              "FREDERICK THOMAS BECK.
"Seventy-six (76) years of age. Born in London, March 22, 1823."

Endorsement on back:
"November 13, 1902, $5.00 on interest."

The petition sets out that Gage is the administrator of the estate of Frederick T. Beck, deceased; that in his lifetime the decedent executed the note and delivered it to plaintiff; that she

*Affirmed without opinion, *Gage, Admrx.,* v. *Beck,* 76 Ohio State, 575.

presented the note for allowance to the administrator, who refused payment, and she prays that the note may be allowed as a valid claim against the estate.

The answer of the defendant admits his appointment as administrator, and the presentation and rejection of the claim, and then follows with a general denial.

It is manifest that the burden put upon the plaintiff was to show that she had the note copied in the petition, and that it was executed by the decedent and delivered by him to her, and that when she had shown these facts she had made a *prima facie* case. She introduced certain witnesses to testify as to the genuineness of the signature of the deceased to the note which she produced, and then she was placed upon the stand and testified that she was the widow of Frederick T. Beck, that she was familiar with his handwriting, and that the signature upon the note was the genuine signature of Frederick T. Beck; that the body of the note was written by himself, and she detailed (without objection) the circumstances under which the note was given, and that she gave him $500 in money for this note. She was then cross-examined very extensively, and among other things was asked as to the relation between herself and her husband, whether they were pleasant or otherwise.

One of the questions in this cross-examination was:

"At the time and prior to the 20th of September, 1899, your domestic relations with Frederick T. Beck, deceased, were not of a friendly nature were they?"

To which she answered:

"Just as much so as any married couple, they have their ups and downs."

And a number of questions of this nature was asked.

She testified, too, upon cross-examination, that she had about $450 at home, which she could have given to her husband, and that she went to Michigan to get the balance, $50, to make out the $500, and that her husband wanted the money with which to build a barn.

The defendant then put upon the stand a number of witnesses for the purpose of showing that the relations between the plaintiff and her husband were unpleasant, and it is urged that such

questions were proper, because if the relations were unpleasant between the parties she would not be likely to lend her husband $500, or any other sum.

We are not prepared to say that it was error to admit evidence of this sort, though there seems to have been some confusion as to just what issue was on trial. The issue raised by the pleadings was whether Beck gave his wife this note for a valuable consideration, and except as bearing upon this issue in some way, it was incompetent.

Some of the evidence permitted over the objections of the plaintiff, we think, was wholly incompetent, but as to a considerable part of such incompetent testimony we think probably no prejudice was worked to the plaintiff, but that prejudice was worked to the plaintiff in the admission of the testimony of Austin, of George H. Beck, and Alfred F. Beck, we have no doubt, and that they were permitted to give incompetent testimony we have no doubt. Each of these witnesses was permitted, over the objection of the plaintiff, to give conversations had with the deceased in the absence of the plaintiff, tending to show that he had ill-feeling against her; that he had no affection for her, and that their relations were not friendly.

Bearing in mind that the issue here was whether the note sued upon was the genuine note of Frederick T. Beck given for value, and that the only possible bearing that the relations between Beck and his wife could have upon it would be upon the probability of his borrowing money from her if their relations were unpleasant, the declarations of Beck, in his wife's absence, that he did not love her, could not be used against her. Suppose he were living and this suit had been brought against him, could he introduce his own declarations made in the absence of his wife, that their relations were unpleasant, that he did not love her, nor she him, and so try to influence the judgment of the jury as to the probability of the loan having been made?

It has probably never been supposed that Antonio could have set up as a defense against the bond which Shylock held, that he, Antonio, had spat upon his Jewish garberdine, called him cutthroat and dog, upon the Rialto, and yet it would seem to be about as competent as the declarations of Beck, here permitted

to be given in evidence. The question seems to answer itself. The declarations of this man on this subject are no more admissible in his favor than any other self-serving declarations made by him. It has never been the law that a man may make use of his own declarations made in the absence of his adversary, against such adversary.

On the part of the defendant in error it is urged that such declarations are admissible for the same reason that if the suit were brought by a husband against some man for alienating his wife's affections, declarations of the wife made in the absence of her husband that she had no affection for him, would be admissible; but clearly there is a reason for that rule which permits the admission of declarations said to have been made by her in the absence of her husband.

The husband who brings suit for the alienation of his wife's affections, as the ground of his action relies upon the fact that he was deprived of the affection of the woman to whose affections he was entitled, and if it can be shown by her declarations made before the alienation complained of that she had no affection for her husband, it would, of course, be admissible in mitigation of damages. The husband would be entitled to less for the alienation of the affections of a wife which were but very slight, or did not exist at all, than he would for the alienation of the affections of a wife, who, prior to the wrongdoing of the defendant, had a genuine and earnest affection for him, and her declarations made even without her husband's knowledge before the wrong for which suit is brought, would have a direct bearing upon the question of what kind of a wife she was, the loss of whose affection the husband was suing for.

We are cited by counsel for defendant in error to 16 Cyc. of Law and Procedure, at pages 1180 to 1183 on this question. We find nothing in reference thereto which aids us in determining the question now being considered.

Complaint is made on the part of the plaintiff in error of the charge of the court, and especially because the court gave the eighth instruction requested by the defendant.

This instruction reads:

"The testimony is before you on behalf of the defendants as to the domestic relations between the plaintiff and her husband, Frederick T. Beck, at or about the time of the date of September 20, 1899; as to whether such relations were strained, unfriendly or otherwise; expert testimony as to the character of the note set forth in said petition has been placed before you, and testimony as to the funds that deceased had in bank at said date, his income, prospective income from the sale of grapes and produce of the farm, and his expenses at said dates, all of which is in the case and to be considered by you as bearing upon the execution and signing of said note, and whether there was any considerable consideration therefor."

This ought not to have been given. It called especial attention to certain testimony, to-wit: the declarations of the deceased in the absence of his wife as to his feelings towards her. This testimony we hold to have been incompetent and hence the attention of the jury should not have been called to it.

The balance of this ought not to have been given, because it calls especial attention to certain parts of the evidence in such wise as to be likely to mislead the jury and induce them to regard it as of more importance than some of the other evidence; whereas, though it may have been admissible, it had a most remote bearing, if any, upon the issues in the case.

Complaint is further made that the court refused to give in charge certain requests made by the plaintiff.

From what has been said in reference to the testimony of the witnesses, as to conversations of the deceased in the absence of his wife, it follows that the second, third and fourth of these requests should have been given. They relate entirely to the testimony of witnesses in regard to these conversations and ask that such testimony be disregarded.

The real error was committed in admitting the testimony, but it having been admitted, the plaintiff was entitled at least to have the court distinctly instruct the jury that no attention should be paid to it. The result of this reasoning is that there was error to the prejudice of the plaintiff, entitling her to a reversal of the judgment, and the judgment is reversed, and the case remanded for a new trial.